ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
FEB 6 2017
U.S. COURT OF
FEDERAL CLAIMS

SCOTT GOODSELL, )
)
      Plaintiff )
vs )
)
THE UNITED STATES OF AMERICA, )    17-171 C
)
      Defendant )
)

## COMPLAINT

1. This action seeks compensation from the United States for breach of contract. This Court has jurisdiction pursuant to the Contract Disputes Act of 1978 and because the United States is the Defendant. 28 U.S.C. sec. 1491 (a)(2).

2. Plaintiff is a United States citizen and legal resident of California.

3. Defendant is the United States of America, acting by and through the Department of Veterans Affairs ("VA"), a federal agency authorized by law to enter into contracts for procurement of goods and services.

## COMMON FACTUAL BACKGROUND

4. Plaintiff Scott Goodsell and his wife Cindy Goodsell own certain real property located at 440 N. 1st Street, San Jose, California (the subject "Property"), which consists of a turn-of-century Victorian mansion improved and expanded over several decades into a 12,000 sf multi-tenant office building with 2 incorporated adjacent parking lots;

Received - USCFC
FEB -6 2017

the Property extends through the block between 1st Street and 2nd Street, and is surrounded on all sides by residential housing. In addition to the San Jose Veterans Center ("SJVC"), the Property houses four other tenants: law firm Campeau Goodsell Smith, the law offices of Martin Deutsch, the law offices of Brad Jones, and the law offices of Anthony Reid. SJVC occupied about 3700 sf of the Property building, with other tenants occupying the remaining 8300 sf of the Property building.

5. In March 2013, several SJVC staff members appeared at the Property to inquire about possible available office rental space, explaining that SJVC was relocating its offices after 17 years at its then-existing location about 2 blocks distant. Of significant expressed SJVC interest was the available on-site parking and the quiet residential neighborhood. After subsequent SJVC visits to the Property, Plaintiff was invited to respond to a VA Request for Lease Proposal ("RFLP") for potential SJVC relocation.

6. The VA RFLP process extended from June 2013 through November 2013, resulting in a Conditional Award Letter on November 15, 2013. Thereafter, Plaintiff engaged an architect, a general contractor and various other building professionals to prepare construction drawings ("CDs") and obtain necessary City building permits. Concurrently, Plaintiff conferred with VA staff regarding clarifications to the proposed standard form VA Lease ("Lease") – albeit VA refused to make any written changes to its standard form Lease, relying instead on incorporation of other attachments. In January 2014, VA (at request of SJVC staff) materially changed the proposed SJVC office layout from the original RFLP offer, resulting in substantial architectural and building structural modifications, generating Change Order 1.

7. On May 14, 2014, Plaintiff and VA entered into Lease VA261-13-L-0027.

Monthly rent is $8,010.00 and is paid in arrears on the first of each following month, according to Lease Amendment P00005, attached hereto as Exhibit 1.

8.  Between January 2014 and October 2014, Plaintiff with his architect, together with VA architect and other professionals, prepared and exchanged architectural drawings and CDs, which were approved by VA prior to Plaintiff meeting with City to pull tenant improvement construction permits in November 2014.

9.  Between November 2014 and March 2015, Plaintiff with his architect and other building professionals, together with VA architect and other professionals, oversaw construction of SJVC tenant improvements, with VA/SJVC unilateral modifications during the construction process resulting in Change Orders 2, 3 and 4. All City required interim inspections were conducted and obtained during the construction process.

10.  On March 11, 2015, VA accepted occupancy of the SJVC office space.

### Parking

11.  During the RFLP process described above, VA advised Plaintiff that SJVC would require substantially more allotted parking spaces than was available under Plaintiff's standard tenant building lease offering. Per VA, Federal requirements mandated 14 SJVC employee parking spaces, and SJVC additionally required 11 client parking spaces. Plaintiff and VA agreed to provide 14 SJVC employee-only tandem parking spaces in the rear parking lot facing 2nd Street ("Rear Lot") and to provide 11 SJVC non-exclusive client-only parking spaces in the front parking lot facing 1st Street ("Front Lot") – this parking space allocation was crucial to ensure other building tenants would not be deprived of parking access for their own clients and staff. To aid those discussions, Plaintiff prepared a hand-drawn draft parking plan designating parking locations. The

Rear Lot is fenced with a rolling locked metal gate (which is regularly locked for security reasons) and the Front Lot is fenced with a rolling lockable metal gate (which is not regularly locked, to allow for SJVC clients evening access).

12. Consistent with those discussions, Lease sec. 102 A provides:

> <u>Parking</u>: 24 [sic] parking spaces as depicted on the plan attached hereto as Exhibit D, partially reserved for the exclusive use of the Government, of which 24 shall be surface/outside parking spaces. In addition, the Lessor shall provide such additional parking spaces as required by the applicable code of the local government entity having jurisdiction over the Property.

At all times, Plaintiff understood "such additional parking spaces as required by the applicable code of the local government entity" to mean ADA-mandated spaces.

13. Since VA required more parking than customarily available, Plaintiff and VA agreed to an additional parking for its 11 client-only parking spaces at $50/each per month ($6,600/year) which was incorporated in Lease sec. 1.03.

14. Prior to November 2014, Plaintiff's architect prepared a parking plan consistent with City applicable code, which architectural drawings and CDs were shared with VA architect and other professionals. The architect-prepared CDs differed from Plaintiff's hand-drawn parking plan in two respects: (a) the Rear Lot parking was striped for 13 single vehicle parking spaces, and (b) there were no additional ADA parking spaces in either the Rear Lot or Front Lot. Plaintiff's architect advised that City applicable code did not require more than the 2 existing ADA parking spaces and that ADA-mandated pathways for any additional ADA parking spaces would diminish available parking area. The CDs submitted to and approved by VA architect and other professionals reflect only 2 ADA parking spaces, and the CDs thereafter submitted to and approved by City for SJVC tenant improvement permits reflect only 2 ADA parking spaces.

15.     In July 2015, prior to striping the Rear Lot parking spaces, Plaintiff inquired and was advised by VA that SJVC preferred 14 tandem employee parking spaces, and the subcontractor was so instructed, and the parking spaces were striped accordingly.

16.     At various times thereafter, VA has asserted that VA is entitled to additional ADA parking spaces (per the hand-drawn plan) and Plaintiff has asserted that VA is not so entitled (per express Lease provisions and prior VA-approved CDs).

17.     In March 2016, VA withheld the sum of $300.00 from February 2016 rent due as penalty for claimed lack of 3 additional ADA parking spaces and VA stated that it would continue to withhold such sums until 3 additional ADA parking spaces were provided. Plaintiff advised VA counsel that no such penalty provision existed under the Lease, and VA reconsidered and subsequently released the withheld sum.

18.     In May 2016, SJVC staff began removing and withholding Plaintiff's combination lock on the Rear Lot.  Previously, SJVC staff was haphazard in keeping the Rear Lot rolling gate closed or locked, resulting in theft of Plaintiff personal property and vandalism to Plaintiff vehicle.  On May 26, 2016, SJVC staff removed/destroyed Plaintiff combination/key locks on 3 occasions in less than a single business day, such that Plaintiff was obligated to install a non-cuttable keyed lock and to advise SJVC employees to use Front Lot parking spaces until the matter could be resolved.  Days later, Plaintiff offered to install a welded-chain-to-post-to-combination lock to prevent future removal/destruction of gate locks, but VA declined Plaintiff's proposal.  Since that date, SJVC staff continued to use the Front Lot parking spaces exclusively (except for a SJVC barbeque pit occupying 2 Rear Lot parking space), as have SJVC clients.  Until September 7, 2016, there were always at least 24 available parking spaces for SJVC.

19. On September 7, 2016, VA Contracting Officer Jerzy Brozyna issued a Final Decision determining to withhold $311.67 per month as a penalty for failure to provide access to the Rear Lot parking spaces and for failure to provide additional ADA parking spaces as described above. By said Final Decision, Brozyna unilaterally modified the Lease to pay for only 10 SJVC parking spaces (albeit there was no actual change in SJVC parking utilization). On September 9, 2016, Plaintiff responded to Brozyna requesting clarification of his Final Decision. Plaintiff has received no response.

20. Plaintiff received no VA September 2016 rent payment. On November 4, 2016, Plaintiff received VA October 2016 rent payment in the sum of $8,010.00. On December 5, 2016, Plaintiff received VA November 2016 rent payment in the sum of $8,010.00. On January 3, 2017, Plaintiff received VA December 2016 rent payment in the sum of $8,010.00. On February 1, 2017, Plaintiff received VA January 2017 partial rent payment in the sum of $6,459.75.

21. At all times since SJVC tenant occupancy in March 2015, SJVC staff have failed to limit SJVC client parking space occupancy to the 11 SJVC client parking spaces in the Front Lot, and SJVC staff have routinely encouraged and directed SJVC clients to double-park and triple-park in unauthorized areas blocking striped parking spaces.

**Flagpole**

22. After receiving the Conditional Award Letter, Plaintiff had communications with VA/SJVC regarding possible installation of a flag pole on the Property – there is no mention of flagpole installation in the RFLP or in the Lease, and SJVC had only a temporary steel pole in a concrete bucket as a flagpole at its prior facility. In August 2015, Plaintiff consented to VA flagpole installation on express condition that VA agree

to remove the flagpole at conclusion of SJVC tenancy.  SJVC thereafter installed a 45' flagpole in October 2015.  Having heard nothing regarding the Lease amendment, on February 8, 2016, Plaintiff sent a letter with proposed Lease Amendment to Brozyna regarding the flagpole removal.  Plaintiff has never received any response to said letter.

### Lease Termination

23. The Lease Term states:

   *To Have and To Hold the said Premises with their appurtenances for the term beginning upon acceptance of the Premises as required by this Lease and continuing for a period of*

   *10 Years, 5 Years Firm,*

   *subject to termination and renewal rights as may be hereinafter set forth ...*

   And as set forth in Lease Amendment P0005, said term commenced March 11, 2015.

24. Termination Rights are set forth in Lease paragraph 1.05:

   TERMINATION RIGHTS (SIMPLIFIED) (JUN 2012)

   *Notwithstanding anything to the contrary contained in this Lease Solicitation,* **after completion of Year 5 of this lease term, the Government may terminate this Lease, in whole or in part, at any time by giving at least 90 days written notice to the Lessor.  The effective date of such termination shall be the first calendar date occurring after such 90 days.**  *If this contract is terminated, the Government shall be liable only for rent payments due and owing to the Lessor prior to, but not including, the effective date of termination, and any unpaid tenant improvement costs identified in the lease.* **(emphasis added).**

25. By letter dated January 23, 2017, CO Brozyna informed Plaintiff that "effective January 26, 2017, the Government will vacate the premises located at 440 North First Street; San Jose, CA 95112, thus terminating Lease Number VA261-13-L-0027" and that VA would not pay rent beyond that date.  Said letter is attached as Exhibit B.

26. CO Brozyna returned keys to SJVC office space on January 26, 2017.

27. Total rents due to Plaintiff from VA pursuant to the Revised Rent Schedule over the Lease Term are $1,057,320.00. Total rents received from VA are $179,837.49. Total Lease rents remaining due to Plaintiff from VA are $877,482.59.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

28. As set forth above, by withholding rent, VA is in breach of its Lease. Total Rents remaining due to Plaintiff from VA pursuant to the Lease are $877,482.59.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief - Parking)

29. As set forth above, VA has asserted that VA is entitled to additional ADA parking spaces and Plaintiff has asserted that VA is not so entitled. An actual controversy now exists and declaratory relief is necessary to define the rights of VA and Plaintiff under the Lease terms regarding this disputed issue.

## THIRD CLAIM FOR RELIEF
### (Declaratory Relief - Flagpole)

30. Plaintiff consented to VA flagpole installation on express condition that VA agree to remove the flagpole at conclusion of SJVC tenancy. VA has refused to execute any Lease amendment agreeing to remove the flagpole, and VA has now terminated its leasehold without removing said flagpole. An actual controversy now exists and declaratory relief is necessary to define the rights of VA and Plaintiff under the Lease terms regarding this disputed issue.

## FOURTH CLAIM FOR RELIEF
### (Bad Faith)

31. Paragraphs 1 through 27 above are incorporated herein by reference.

32. Plaintiff is informed and believes that after occupying the SJVC office space, VA determined that its self-designed office space was mal-adapted to its actual usage needs – its parking needs exceeded its Lease-mandated parking allocations, its usage of outdoor spaces created issues with its residential neighbors, and its self-designed meeting rooms could not accommodate its clientele needs. Attempting to impose those internally-generated problems onto Plaintiff was unavailing, and Plaintiff is informed and believes that SJVC staff spent its client counseling time defaming Plaintiff in an effort to obfuscate VA ineptitude in designing and managing its SJVC office space. Plaintiff is informed and believes that in/about September 2016, VA decided to seek new space and VA issued a new RFLP seeking, among other things, new 4,000 - 4,500 sf leased space (10-30% increased space) with "surge parking" for 25 vehicles. At the same, time, CO Brozyna unilaterally reduced SJVC parking to 10 parking spaces, without decreasing any SJVC actual parking usage, knowing it would create new conflicts.

33. VA/SJVC has always been able to use SJVC office space and appurtenant space for its intended use, within the limitations of the Lease. Plaintiff is informed and believes that the precipitous January 26, 2017 lease termination created unnecessary costs to both Plaintiff and VA, and substantial inconvenience to VA veterans clientele.

33. Given the foregoing circumstances, VA's January 26, 2017 lease termination was not only wrongful, but violative of the Lease covenant of good faith and fair dealing.

## RELIEF SOUGHT

WHEREFORE, PLAINTIFF prays for relief as follows:

    (1)    Damages for rents due under the Lease in total sum of $877,482.59;

    (2)    Determination that VA is not entitled to additional ADA parking spaces;

    (3)    Determination that VA is obligated to remove SJVC flagpole;

    (4)    Costs incurred herein;

    (5)    Statutory interest allowable; and

    (6)    Such other relief as this Court may deem just and proper.

February 1, 2017

_____
Scott Goodsell
440 N. First Street, Suite 100
San Jose, California  95112
tel. (408) 295-9555
fax (408) 295-6606