ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCOTT GOODSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-171C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**
DEC 15 2017
U.S. COURT OF FEDERAL CLAIMS

DEFENDANT'S ANSWER TO THE COMPLAINT AND COUNTERCLAIM

For its answer to the complaint, defendant admits, denies, and alleges as follows:

1. The allegations contained in the first sentence of paragraph 1 are plaintiff's characterization of his case to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied. The remaining allegations contained in paragraph 1 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

2. Denies the allegations contained in paragraph 2 for lack of knowledge or information sufficient to form a belief as to their truth.

3. Admits the allegations contained in paragraph 3 that defendant is the United States and that the United States Department of Veterans Affairs (VA) is a federal agency. The remaining allegations contained in paragraph 3 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

4. Admits the allegations contained in the first sentence of paragraph 4 that the property is a 12,000 square foot multi-tenant office building with two incorporated adjacent parking lots, and that the property extends through the block between 1st Street and 2nd Street. Admits the allegations contained in the third sentence of paragraph 4 that the VA occupied

RECEIVED - USCFC
DEC 15 2017

approximately 3,700 square feet of the property. Denies the remaining allegations contained in paragraph 4 for lack of knowledge or information sufficient to form a belief as to their truth.

5. Admits the allegations contained in paragraph 5.

6. Admits the allegations contained in the first sentence of paragraph 6. Denies the allegations contained in the second sentence of paragraph 6 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the third sentence of paragraph 6 that plaintiff conferred with VA staff regarding clarifications to the proposed standard form VA lease. Admits the allegations contained in the fourth sentence of paragraph 6 that the VA changed the proposed SJVC office layout from the original RFLP offer. Denies the remaining allegations contained in paragraph 6.

7. Admits the allegations contained in the first sentence of paragraph 7. Admits the remaining allegations contained in paragraph 7 to the extent supported by the lease and its amendments, which are the best evidence of their contents; otherwise denies the allegations.

8. Admits the allegations contained in paragraph 8 that between January and October 2014 plaintiff and defendant prepared and exchanged architectural drawings and CDs, and that the VA approved those architectural drawings and CDs. Denies the remaining allegations contained in paragraph 8 for lack of knowledge or information sufficient to form a belief as to their truth.

9. Admits the allegations contained in the first sentence of paragraph 9. Denies the allegations contained in the second sentence of paragraph 9 for lack of knowledge or information sufficient to form a belief as to their truth.

10. Admits the allegations contained in paragraph 10.

11.     Admits the allegations contained in the first sentence of paragraph 11. Denies the allegations contained in the second and third sentences of paragraph 11. Admits the allegations contained in the fourth and fifth sentences of paragraph 11.

12.     Admits the allegations contained in the first sentence of paragraph 12 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations. Denies the allegations contained in the second sentence of paragraph 12 for lack of knowledge or information sufficient to form a belief as to their truth.

13.     Admits the allegations contained in paragraph 13 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations.

14.     Admits the allegations contained in the first sentence of paragraph 14 that prior to November 2014, plaintiff's architect prepared a parking plan, and that plaintiff shared those architectural drawings and CDs with the VA. The remaining allegations contained in the first sentence of paragraph 14 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied. Admits the allegations contained in the second sentence of paragraph 14. Denies the allegations contained in the third sentence of paragraph 14 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the fourth sentence of paragraph 14 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations.

15.     Denies the allegations contained in paragraph 15.

16.     Admits the allegations contained in paragraph 16 that the VA asserted that it was entitled to parking spaces per the hand-drawn plan and that plaintiff asserted that the VA was not so entitled. Denies the remaining allegations contained in paragraph 16.

17. Admits the allegations contained in the first sentence of paragraph 17. Admits the allegations contained in the second sentence of paragraph 17 that plaintiff asserted that no such penalty provision existed under the lease, and that the VA subsequently released the withheld sum. Denies the remaining allegations contained in the second sentence of paragraph 17.

18. Denies the allegations contained in the first, second, and third sentences of paragraph 18. Admits the allegations contained in the fourth sentence of paragraph 18 that plaintiff offered to install a welded-chain-to-post-to-combination lock. Denies the remaining allegations contained in the fourth sentence of paragraph 18. Admits the allegations contained in the fifth sentence of paragraph 18. Denies the allegations contained in the sixth sentence of paragraph 18.

19. Admits the allegations contained in the first and second sentences of paragraph 19 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations. Admits the allegations contained in the third and fourth sentences of paragraph 19.

20. Denies the allegations contained in the first sentence of paragraph 20. Admits the allegations contained in the second sentence of paragraph 20 that the VA paid October 2016 rents in the amount of $8,010.00. Denies the remaining allegations contained in the second sentence of paragraph 20 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the third sentence of paragraph 20 that the VA paid November 2016 rents in the amount of $8,010.00. Denies the remaining allegations contained in the third sentence of paragraph 20 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the fourth sentence of paragraph 20 that the VA paid December 2016 rents in the amount of $8,010.00. Denies the

remaining allegations contained in the fourth sentence of paragraph 20 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the fifth sentence of paragraph 20 that the VA paid January 2017 rents in the amount of $6,459.75. Denies the remaining allegations contained in the fifth sentence of paragraph 20.

21. Denies the allegations contained in paragraph 21.

22. Admits the allegations contained in the first sentence of paragraph 22 that after receiving the conditional award letter plaintiff had communications with the VA regarding possible installation of a flagpole on the property. Admits the remaining allegations contained in the first sentence of paragraph 22 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies the allegations. Admits the allegations contained in the second sentence of paragraph 22 that in August 2015 plaintiff consented to VA flagpole installation on the property. Denies the remaining allegations contained in the second sentence of paragraph 22. Admits the allegations contained in the third sentence of paragraph 22. Admits the allegations contained in the fourth sentence of paragraph 22 that on February 8, 2016, plaintiff sent a letter with a proposed lease amendment regarding the flagpole removal to Contracting Officer Jerzy Brozyna. Denies the remaining allegations contained in the fourth sentence of paragraph 22 for lack of knowledge or information sufficient to form a belief as to their truth. Denies the allegations contained in the fifth sentence of paragraph 22.

23. Admits the allegations contained in paragraph 23 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations.

24. Admits the allegations contained in paragraph 24 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations.

25. Admits the allegations contained in paragraph 25 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations.

26. Admits the allegations contained in paragraph 26.

27. The allegations contained in the first sentence of paragraph 27 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied. Denies the allegations contained in the second sentence of paragraph 27. The allegations contained in the third sentence of paragraph 27 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

28. The allegations contained in paragraph 28 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

29. Admits the allegations contained in the first sentence of paragraph 29. The allegations contained in the second sentence of paragraph 29 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

30. Admits the allegations contained in the first sentence of paragraph 30 that plaintiff consented to VA flagpole installation. Denies the remaining allegations contained in the first sentence of paragraph 30. Admits the allegations contained in the second sentence of paragraph 30. The allegations contained in the third sentence of paragraph 30 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

31. Defendant incorporates by reference its answers to paragraph 1 to 30 as if fully set forth herein.

32. Denies the allegations contained in the first, second, and third sentences of paragraph 32 for lack of knowledge or information sufficient to form a belief as to their truth. Denies the allegations contained in the fourth sentence of paragraph 32.

33. The allegations contained in the first paragraph 33 are plaintiff's characterization of its case to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

34. The allegations contained in the second paragraph 33 constitute conclusions of law to which no answer is required; to the extent that they may be deemed allegations of fact, they are denied.

35. Denies each and every allegation not previously admitted or otherwise qualified.

36. Denies that plaintiff is entitled to the relief set forth in the prayer for relief immediately following the second paragraph 33, or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred wholly or in part by the doctrine of default termination.

2. Plaintiff's claims are barred wholly or in part by the doctrine of constructive eviction.

3. Plaintiff's claims are barred wholly or in part by failure to mitigate damages.

4. Plaintiff's claims are barred wholly or in part by mitigation of damages.

5. Plaintiff's claims are barred wholly or in part by accord and satisfaction.

6. Plaintiff's clams are barred wholly or in part by payment.

7. Plaintiff's claims are barred wholly or in part by set off.

WHEREFORE, defendant requests that the Court enter judgment in its favor, order that the complaint be dismissed, and grant defendant such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

For its counterclaim against plaintiff, Scott Goodsell, defendant, the United States, alleges as follows:

1. The Court possesses jurisdiction to entertain this Counterclaim pursuant to 28 U.S.C. §§ 1503 and 2508 and the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101–7109.

2. On May 14, 2014, Mr. Goodsell entered into a contract (the Lease) with the United States Department of Veterans Affairs (VA) to lease property in San Jose, California, for the VA to use as a veterans' counseling center (the San Jose Veterans Center or SJVC).

3. Several of the veterans who are patients at the SJVC suffer from post-traumatic stress disorder (PTSD). PTSD is a psychiatric disorder that may be triggered by experiencing or witnessing a life-threatening event such as being exposed to military combat. The symptoms of PTSD may include flashbacks, nightmares, severe anxiety, and uncontrollable thoughts about the traumatic event.

4. The availability of on-site parking was particularly important to the VA in entering into the Lease. Accordingly, the Lease provides the VA with sixteen exclusive staff parking spaces (fourteen regular and two disabled) in the rear parking lot, and fourteen non-exclusive patient parking spaces (eleven regular and three disabled) in the front parking lot. Lease § 1.02.A & Ex. D.

5. The Lease provides that it is for a term of "10 Years, 5 Years Firm, subject to termination and renewal rights as may be hereinafter set forth." Lease at 1.

6. The Lease includes a Termination Rights clause which provides that "after completion of Year 5 of this lease term, the Government may terminate this Lease, in whole or in part, at any time by giving at least 90 days written notice." Lease § 1.05.

7.  The Lease also includes a Default By Lessor clause that permits "[t]he Government [to] terminate the Lease if: (i) The Lessor's default persists notwithstanding provision of notice and reasonable opportunity to cure by the Government, or (ii) The Lessor fails to take such actions as are necessary to prevent the recurrence of default conditions, and such conditions (i) or (ii) substantially impair the safe and healthful occupancy of the Premises, or render the Space unusable for its intended purposes." Lease § 2.11.A(3).

8.  The Default By Lessor clause expressly acknowledges that "[t]he rights and remedies specified in this clause are in addition to any and all remedies to which the Government may be entitled as a matter of law." Lease § 2.11.A(5). Thus, the Lease also retains the Government's common law right to terminate the Lease on the basis of constructive eviction.

9.  Mr. Goodsell promised to complete tenant improvements to the property by January 31, 2015, but failed to do so. In particular, Mr. Goodsell did not make the required tenant improvements to the parking lots, such as repaving and striping the parking spaces required by the Lease.

10. The VA took occupancy of the property on March 11, 2015, but began experiencing problems with the property shortly thereafter.

11. Almost immediately upon moving in, the VA encountered difficulties with the property's HVAC system. Specifically, the HVAC system would stop working periodically, making it extremely uncomfortable for VA staff to work at, and for VA patients to receive counseling at, the property. The VA raised these HVAC problems with Mr. Goodsell. However, instead of resolving the HVAC problems, Mr. Goodsell accused the VA of misusing the thermostats by setting temperatures below seventy degrees Fahrenheit and leaving exterior doors open. Subsequently, Mr. Goodsell claimed that the HVAC system required twenty-four hours to

reset and that no heating or air conditioning would be available during that time. These HVAC issues persisted throughout the VA's tenancy and were never adequately resolved.

12. On or about March 31, 2015, Mr. Goodsell started disturbing VA staff and patients. Mr. Goodsell began by accusing VA staff of leaving the rear parking lot gate open. Lighting in the rear parking lot was inadequate and, on one occasion, Mr. Goodsell suggested that if a female VA staff member felt unsafe parking in the rear parking lot, she should park in the front parking lot instead.

13. Mr. Goodsell's disruption of VA staff and patients subsequently escalated. In April 2015, Mr. Goodsell began raising his voice in anger at the VA staff and confronting them about various issues. Mr. Goodsell also began entering the SJVC, without invitation or permission, to rudely and loudly make complaints, which unnerved VA staff and patients. During this time, Mr. Goodsell also began approaching and confronting VA staff and patients. Mr. Goodsell's conduct was particularly problematic for the SJVC because its patients include veterans suffering from PTSD.

14. As of April 2015, the rear parking lot contained Mr. Goodsell's moving truck and van, a large metal container, bricks, and various pallets and other large items, all of which reduced the parking available to VA staff. In addition, nails and debris in the rear parking lot caused tire damage to some of the VA staff's vehicles.

15. Mr. Goodsell's continued failure to complete the required tenant improvements to the parking lots negatively impacted the VA's ability to hold a major function for veterans on May 30, 2015, the week of Memorial Day.

16. On June 18, 2015, Mr. Goodsell sent notice that long-delayed concrete and demolition work would be performed on June 20, 2015. This required the VA to cancel at the last minute its heavily advertised veterans event planned for that day.

17. On July 21, 2015, the VA sent Mr. Goodsell an e-mail reiterating the Lease's parking requirements. In response, on July 27, 2015, Mr. Goodsell did not unlock the gate to the front parking lot until 8:00 a.m., an hour after the SJVC opened at 7:00 a.m. This prevented veterans from accessing the property, delayed some patients with early appointments, and forced other patients to miss their appointments entirely.

18. On August 26, 2015, Mr. Goodsell again entered the SJVC without permission and angrily and threateningly confronted the VA staff. Mr. Goodsell also repeatedly peered into the windows of the SJVC, disrupting patient counseling sessions.

19. In September 2015, Mr. Goodsell repaved and partially striped the parking lots. However, Mr. Goodsell did not provide either of the two required disabled parking spaces in the rear parking lot and did not provide one of the three required disabled parking spaces in the front parking lot.

20. In December 2015, Mr. Goodsell parked his moving truck in the rear parking lot, blocking the proposed location of the two required disabled parking spaces. In response to the VA's complaint, Mr. Goodsell claimed that it would not be possible to stripe these disabled parking spaces and that these spaces were not required by the Lease.

21. Mr. Goodsell continued to enter the SJVC without permission, including on January 30, 2016.

22. On May 25, 2016, Mr. Goodsell entered the SJVC without permission for the second time within a week and inquired about the lock to the rear parking lot gate. Mr. Goodsell

threatened to lock the gate and prevent VA staff from entering or exiting the rear parking lot without his permission. Around this time, a VA staff member had to request that Mr. Goodsell open the rear parking lot gate for her because her car was locked in the rear parking lot.

23. On May 26, 2016, Mr. Goodsell parked a truck or van across the entrance to the rear parking lot, blocking access to it. Thereafter, the VA remained unable to access the rear parking lot through the remainder of its tenancy.

24. On June 11, 2016, Mr. Goodsell disrupted a widely-publicized event by parking several large vehicles diagonally across the rear parking lot.

25. On June 14, 2016, Mr. Goodsell purported to terminate the VA's outdoor assembly privilege in the rear parking lot.

26. In July 2016, Mr. Goodsell removed and discarded several signs used to advertise the SJVC.

27. By August 2016, Mr. Goodsell had placed a number of large items on the back porch overlooking the rear parking lot, which prevented VA staff from using the porch.

28. On September 16, 2016, Mr. Goodsell deemed the front parking lot full and stood at the front parking lot gate turning veterans away, preventing them from keeping their counseling appointments. Mr. Goodsell passed out a leaflet falsely claiming that the VA had reduced parking and encouraging veterans to contact the VA.

29. Thereafter, Mr. Goodsell continued to patrol the entrance to the front parking lot, forcing VA staff and patients to park a block or two away from the SJVC for the remainder of the VA's tenancy.

30. Mr. Goodsell's alarming and unsettling conduct ultimately forced the VA to move its counseling appointments from the SJVC to another building in the area.

31.   Having been unable to resolve the foregoing problems with Mr. Goodsell, the VA terminated the Lease and vacated the property on January 25, 2017.

32.   The VA properly terminated the Lease pursuant to the Default By Lessor clause.

33.   The VA also properly terminated the Lease pursuant to the common law doctrine of constructive eviction.

34.   On December 14, 2017, VA Contracting Officer Jerzy Brozyna issued a final decision demanding payment from Mr. Goodsell for $263,184.65 for the VA's loss of the benefit of tenant improvements and $24,030.00 for rents erroneously paid after the VA terminated the Lease and vacated the property.

COUNT I
TENANT IMPROVEMENTS

35.   Defendant incorporates by reference its allegations in paragraphs 1 to 34 as if fully set forth herein.

36.   Pursuant to the Lease, the VA paid Mr. Goodsell a lump sum tenant improvement payment of $274,740.00 in exchange for certain improvements to the property. Lease § 1.03.

37.   On July 25, 2014, the VA approved a change order for additional tenant improvements in the amount of $98,000.00 related to the removal of a bearing wall. Lease Am. P00001.

38.   On March 10, 2015, the VA approved a change order for additional tenant improvements in the amount of $12,000.00 related to HVAC control upgrades. Lease Am. P00002.

39.   Also on March 10, 2015, the VA approved a change order for additional tenant improvements in the amount of $37,179.00 related to electrical upgrades. Lease Am. P00003.

40. In addition, the VA paid for additional tenant improvements in the amount of $392.70 related to upgraded window blinds.

41. In total, the VA paid Mr. Goodsell $422,311.70 for tenant improvements to the property.

42. The VA expected to have the benefit of these tenant improvements for at least the five-year firm term of the Lease. However, because the VA was forced to terminate its Lease and vacate the property, it only received the benefit of these tenant improvements for less than two years.

43. Specifically, the VA expected to have the benefit of the tenant improvements for at least five years or 1,826 days, but only received the benefit of the tenant improvements for 1 year, 10 months, and 16 days or 688 days (or for less than 37.7% of the firm term of the Lease).

44. Thus, the VA did not receive the benefit of the tenant improvements for the remaining 1,138 days of the firm term of the Lease (or more than 62.3%).

45. Accordingly, the VA is entitled to recover $263,184.65 for the loss of the benefit of the tenant improvements for at least the remainder of the five-year firm term of the Lease.

## COUNT II
## OVERPAID RENTS

46. Defendant incorporates by reference its allegations in paragraphs 1 to 45 as if fully set forth herein.

47. The VA fully paid all rents due through January 25, 2017, the date that it terminated the Lease and vacated the property.

48. Because the VA properly terminated the Lease pursuant to the Default By Lessor clause and the common law doctrine of constructive eviction, the VA's obligation to pay rents ceased when it terminated the Lease and vacated the property on January 25, 2017.

49. However, the VA erroneously continued to pay rents to Mr. Goodsell after the VA terminated the Lease and vacated the property.

50. Specifically, the VA erroneously paid Mr. Goodsell $8,010.00 per month for three months, for a total of $24,030.00.

51. Mr. Goodsell is not entitled to retain these erroneously overpaid rents.

52. Accordingly, the VA is entitled to recover $24,030.00 for rents erroneously paid after the VA terminated the Lease and vacated the property.

WHEREFORE, defendant requests that the Court enter judgment in its favor, grant defendant a monetary judgment against plaintiff, and grant defendant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

L. MISHA PREHEIM
Assistant Director

STEVEN C. HOUGH
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC  20044
Telephone: (202) 507-6030
Facsimile:  (202) 514-7965
steven.c.hough@usdoj.gov

OF COUNSEL:

DAVID FAGAN
Senior Litigation Counsel
U.S. Department of Veterans Affairs

December 15, 2017

Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 15th day of December, 2017, I caused to be placed in the United States mail (first-class, postage prepaid) a copy of "DEFENDANT'S ANSWER TO THE COMPLAINT AND COUNTERCLAIM" addressed as follows:

> Scott Goodsell
> 440 N. First Street, Suite 100
> San Jose, CA  95112

_____